UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD HORNSBY | : |
| Plaintiff, | : |
| v. | : Civil Action No. 16-0517 (GK) |
| MELVIN L. WATT, DIRECTOR, FEDERAL HOUSING FINANCE AGENCY: | : |
| Defendant. | : |

## Memorandum Opinion and Order

Plaintiff Richard Hornsby ("Plaintiff," "Hornsby") brings this lawsuit against the Director of the Federal Housing Finance Agency ("Defendant," "Government," or "FHFA"). Plaintiff alleges two counts of retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*. Complaint ¶¶ 26-29. Specifically, Plaintiff alleges that he was placed on administrative leave and then proposed for removal from his position because he agreed to settle a retaliation complaint brought against FHFA by one of his subordinates. See generally Complaint. Plaintiff seeks compensatory damages of $300,000, plus interest, improved performance ratings and any resultant bonuses, plus interest, crediting of annual and sick leave for the time he

1

remained on administrative leave, and attorney's fees and costs. Id. at p. 14-15.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant filed its Motion to Dismiss on June 23, 2016. Mot. to Dismiss [Dkt. No. 7]. Plaintiff filed his Opposition on July 14, 2016. Opp'n [Dkt. No. 9]. Defendant filed a Reply on July 21, 2016. Reply [Dkt. No. 10]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion to Dismiss is granted.

I.    Background

A. Factual Background[1]

i. Hornsby's Early Tenure at FHFA

Richard Hornsby was hired as the Chief Operating Officer ("COO") of FHFA on December 6, 2011. Complaint ¶ 5. Initially,

---

[1] The following allegations are taken from Plaintiff's Complaint, unless otherwise noted, and are accepted as true. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) ("we accept the plaintiff's factual allegations as true"). In addition, the Court considers the contents of both the letter, placing Hornsby on Administrative Leave, Ex. A to Mot. Dismiss [Dkt. No. 7-2], and the Notice of Proposal to Remove, Ex. B to Mot. Dismiss [Dkt. No. 7-3]. Both these documents are incorporated into Plaintiff's Complaint by reference, see Complaint ¶¶ 17, 23, and therefore may be considered by the Court. Maggio v. Wisconsin Ave. Psychiatric Ctr., 795 F.3d 57, 62 (D.C. Cir. 2015) (in deciding on a motion to dismiss a court may consider sources other than the complaint, such as "documents incorporated into the complaint by reference and matters of which a court may take judicial notice.") (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)) (internal quotation marks omitted).

Hornsby reported to Edward DeMarco ("DeMarco"), who had been the previous COO of FHFA but was serving as the Acting Director at the time of Hornsby's hire.  Id. at ¶ 9.  For 2012, Hornsby's first full year as COO, DeMarco rated his performance as "Outstanding" and gave him a bonus of $17,500 and a retention allowance of over $25,000.[2]  Id.

### ii. Deterioration in Relationship between Hornsby and DeMarco

Sometime in 2013, Melvin Watt was nominated to be the Director of FHFA.  Id. at ¶ 10.  DeMarco allegedly became concerned that if Watt were confirmed, he would be forced into a position with significantly less authority than that of either Acting Director or COO.  Id.  When it became evident in September 2013 that Watt would likely be confirmed, DeMarco allegedly began a campaign of "criticism and abuse" intended to drive Hornsby from FHFA so that DeMarco could take back his position as COO.  Id.

---

The Court stresses that while it takes notice of the contents of the Proposal to Remove, it does not accept as true the statements describing Hornsby's conduct contained therein because Hornsby characterizes those statements as wholly untrue and fabricated.  Complaint ¶¶ 16, 23.  Instead, for purposes of deciding the Motion to Dismiss, the court accepts as true Hornsby's allegation that these descriptions of his conduct were fabricated by various individuals within FHFA.  See Browning, 292 F.3d at 242.

[2] The retention allowance was intended to defray the costs of maintaining a residence in Washington (in addition to his primary residence in California) and of travel to California to see his wife. Complaint ¶ 9.

For example, in September 2013 DeMarco cancelled Hornsby's
retention bonus, and in December 2013 DeMarco informed Hornsby
that he would be receiving a critical performance rating for 2013.
Id. at ¶ 11.  On March 11, 2014, DeMarco provided Hornsby with his
2013 performance review, rating his performance "Fully
Successful." Id.  This rating was two levels below the 2012 rating
of "Outstanding," and made Hornsby ineligible for a cash bonus.
Id. at ¶¶ 11, 12.

Watt took office as the Director of FHFA on January 6, 2014.
Id. at ¶ 12.  DeMarco reverted to a Deputy Director position, and
tendered his resignation from FHFA in late March 2014, to be
effective at the end of April 2014.

### iii. Issues Arise between Hornsby and Subordinate during Same Period

During this same time period, Hornsby alleges that he was
beginning to lose confidence in one of his subordinates, Jeffrey
Risinger ("Risinger"), the head of FHFA's Human Resources Unit.
Id. at ¶ 14.  According to Hornsby, he had initially supported
Risinger after a retaliation complaint was brought against him by
his subordinate, Marie Harte ("Harte"). Id. at ¶ 15.  On Friday,
April 25, 2014, Hornsby, in his capacity as FHFA's settlement
officer for Equal Employment Opportunity (EEO) claims, attended a
mediation session related to Harte's EEO complaint. Id.  In this
meeting, Hornsby came to believe that Risinger had lied to him

4

about the issues raised in Harte's EEO complaint, and therefore decided to settle her complaint.  Id.

### iv.  Risinger Reports that Hornsby Threatened DeMarco

The following Monday, April 28, 2014, Risinger reported to FHFA officials that Hornsby had made statements threatening DeMarco's life and physical safety.  Id.  Specifically, Risinger reported that Hornsby said, among other things: "I can understand how someone could go postal, [sic] if I decide to take myself out I will walk into Ed DeMarco's office and blow his brains out and then kill myself"; that he would shoot DeMarco in the kneecap and state "don't [expletive redacted] with me"; and that he would "rip [DeMarco] limb by limb from his office."  Ex. B to Mot. to Dismiss [Dkt. No. 7-3 at p. 3-4].

Hornsby alleges that Risinger's report was "pure invention" and that he "never asserted any such threats."  Complaint at ¶ 16. Instead, he alleges that Risinger fabricated these threats in retaliation for Hornsby's decision to settle Harte's EEO complaint against Risinger.  Id. at ¶ 25.

### v.  Hornsby Is Placed on Administrative Leave

The same day as Risinger reported the purported threats, FHFA management placed Hornsby on administrative leave and had him immediately escorted from the building.  Id. at ¶ 17; Ex. A to

5

Mot. to Dismiss [Dkt. No. 7-2 at p. 2]. The letter placing him on administrative leave states that his administrative leave would last "until further notice," while the allegations against him were investigated, and that he would receive his usual pay and benefits while on leave. Id. [Dkt. No. 7-2 at p. 2-3].

Subsequently, agents from FHFA's Office of the Inspector General (OIG) interviewed Hornsby and then placed him under arrest. Complaint at ¶¶ 17, 18. Hornsby was initially charged with three felonies, Id. at ¶ 18, but the charges were later reduced to two misdemeanors. Id. at ¶ 20.

While he was awaiting trial, Hornsby received multiple settlement offers from FHFA, including from Watt directly. Id. at ¶¶ 19, 20. Though the terms of these offers are not specified in detail in the Complaint, Hornsby claims that FHFA offered him a "buy-out" and the dismissal of charges if he left the agency. Id. Hornsby was told that if he refused the settlement he would be terminated regardless of the outcome of the trial. Id.

### vi. Hornsby Is Tried, Acquitted, and Thereafter Removed from Employment at FHFA

In November 2014, a bench trial was held in D.C. Superior Court on the two misdemeanor charges against Hornsby. Id. at ¶ 21. On November 20, 2014, Hornsby was acquitted of both charges.

Id.  Following his acquittal, Hornsby was not returned to regular duty at FHFA.  Id. at ¶ 22.

Instead, on December 19, 2014, Watt issued a Notice of Proposal to Remove ("Proposal to Remove") Hornsby from his position as COO and from federal service.  Id.; Ex. B to Mot. to Dismiss [Dkt. No. 7-3 at p. 3-4].  In the Proposal to Remove Watt identifies a long list of incidents, from which he concluded Hornsby had engaged in "Conduct Unbecoming a Federal Manager."  Ex. B to Mot. to Dismiss [Dkt. No. 7-3 at p. 3-6].  Among these incidents were the purported threats against DeMarco reported by Risinger.  Id. In addition, the Proposal to Remove also included allegations of improper conduct made by employees other than Risinger.  Id.  The Proposal to Remove determined that Hornsby would remain on administrative leave.  Id.  [Dkt. No. 7-3 at p. 9].  Hornsby alleges that the charges in the Proposal to Remove "were untrue and twisted out of context" and "invented" by the investigators from FHFA's Office of General Counsel and OIG.  Complaint ¶ 23.

On March 19, 2015, Watt issued a decision to remove Hornsby from his position as COO and from federal service, effective March 21, 2015.  Complaint ¶ 24.

### B. Procedural Background

Following his removal, Hornsby filed an appeal with the Merit Systems Protection Board ("MSPB"), arguing that his removal was a

violation of civil service protections and an act of unlawful retaliation in violation of Title VII.  Id. at ¶ 24.  That appeal is still pending before the MSPB.  Id.

On March 18, 2016, Hornsby filed his Complaint in this action, challenging only the failure to reinstate him from administrative leave following his acquittal and his proposed removal.  [Dkt. No. 1].  Following the grant of an extension of time, the Government timely filed its Motion to Dismiss on June 23, 2016.  [Dkt. No. 7].  Hornsby filed an Opposition on July 14, 2016.  [Dkt. No. 9]. The Government filed its Reply on July 21, 2016.  [Dkt. No. 10].

## II.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal upon the "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A claim is facially plausible when the pleaded facts "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Plausibility requires "more than a sheer

possibility that a defendant has acted unlawfully," but it is not a "probability requirement." Id.

At the Rule 12(b)(6) stage, the court accepts all of the complaint's factual allegations as true and draws all reasonable inferences from those facts in plaintiff's favor. Browning v. Clinton, 292 F.3d at 242. However, the court does not accept "inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint." Id. (internal quotation marks and citations omitted). Similarly, the court need not accept plaintiff's legal conclusions simply because they are "cast in the form of factual allegations." Id. (internal quotation marks and citations omitted). "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements," are insufficient to survive a motion to dismiss. Iqbal 556 U.S. at 678.

In addition to the complaint, the court may consider other sources, such as "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." Maggio, 795 F.3d at 62 (quoting Tellabs, Inc., 551 U.S. at 322) (internal quotation marks omitted).

## III. Analysis

### A. Title VII Retaliation Standard

"Title VII prohibits the federal government from. . . retaliating against employees for engaging in activity protected by Title VII." Montgomery v. Chao, 546 F.3d 703, 706, (D.C. Cir. 2008)). To prove unlawful retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) that the employer took a materially adverse action against her; and (3) that the employer took the action "because" the employee engaged in protected activity. McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012). "To survive [a]. . .motion to dismiss, [a] plaintiff['s] complaint must contain sufficient factual matter, accepted as true to plausibly establish those three elements."[3] Howard R.L. Cook & Tommy Shaw Found. for Black Employees of the Library of Congress v. Billington, 737 F.3d 767, 772 (D.C. Cir. 2013) (internal

---

[3] Where a plaintiff attempts to prove unlawful retaliation in violation of Title VII using circumstantial evidence of motive, the burden-shifting framework of McDonnell Douglas ordinarily applies. Allen v. Johnson, 795 F.3d 34, 39 (D.C. Cir. 2015) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973)). However, when assessing the sufficiency of a complaint at the 12(b)(6) stage, the court will not dismiss a complaint simply for failing to plead the elements of a prima facie case. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-12 (2002). Instead, "ordinary rules for assessing the sufficiency of a complaint apply." Id. at 511; see e.g. Wheeler v. Georgetown Univ. Hosp., 788 F. Supp. 2d 1, 5 (D.D.C. 2011); Bryant v. Pepco, 730 F. Supp. 2d 25, 28-29 (D.D.C. 2010).

quotation marks and citations omitted) (explaining the application
of Iqbal to a Title VII retaliation claim).

In this case, the Government argues that Plaintiff has failed
to allege any facts from which the Court can infer that the actions
taken against him constitute materially adverse actions.[4]

> **B. Plaintiff Has Failed to Allege Any Facts Supporting an Inference that He Was Subjected to Materially Adverse Actions**
>
>> **i. An Action Is Materially Adverse if it Causes Objectively Tangible Harm**

Materially adverse actions are those that are "harmful to the
point that they could well dissuade a reasonable worker from making
or supporting a charge of discrimination." Burlington N. & Santa
Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  To be materially
adverse, an action must cause "objectively tangible harm," which
cannot be "unduly speculative." Bridgeforth v. Jewell, 721 F.3d
661, 663 (D.C. Cir. 2013) (internal citation and quotation marks

---

[4] The Government concedes that Plaintiff engaged in protected
activity by settling Harte's retaliation complaint against
Risinger.   See Mot. to Dismiss at p. 12.   The Government also
argues, that even if the Court were to conclude that Plaintiff has
sufficiently plead facts supporting an inference he was subject to
materially adverse actions,   he has failed to allege facts
supporting an  inference that there is a causal connection between
his participation in protected activity and those actions. Id. at
p. 8.    It is unnecessary to address this argument because, as
discussed below, the Court concludes that Plaintiff has failed to
allege facts sufficient to support an inference that he was subject
to any materially adverse actions and his Complaint must be
dismissed on that basis.

omitted); see also Taylor v. Solis, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (failure to promote is not a materially adverse action where it does not result in "objectively tangible harm"); Wiley v. Glassman, 511 F.3d 151, 160-61 (D.C. Cir. 2007) (change in job responsibilities is not a materially adverse action if there is no "objectively tangible harm").

Ordinarily, a materially adverse action "involves a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Bridgeforth, 721 F.3d at 663. However, materially adverse actions are not limited to actions that occur in the workplace or are directly related to the terms of employment. Burlington N., 548 U.S. at 63-64 (citing Rochon v. Gonzales, 438 F.3d 1211, 1213 (D.C. Cir. 2006) (FBI's refusal, contrary to policy, to investigate death threats against employee constitutes a materially adverse action).

### ii. The Failure to Reinstate Plaintiff from Paid Administrative Leave Did Not Cause Him Objectively Tangible Harm

The Government argues that the decision not to reinstate an employee from a period of paid administrative leave, while an investigation is ongoing, can never constitute a materially adverse action. Mot. to Dismiss at p. 9. Plaintiff responds that

12

this decision, when viewed in context of all other events in this case, was sufficiently harmful to dissuade a reasonable worker from engaging in protected activity and is therefore a materially adverse action.  Opp'n at p. 3.

The Court of Appeals does not appear to have addressed this question, and neither party has identified a case directly on point.  However, the Government cites to a number of cases in this District holding that placing an employee on paid administrative leave does not, in and of itself, constitute an adverse employment action for purposes of a Title VII discrimination claim.  Mot. to Dismiss at 9 (citing Jones v. Castro, 168 F. Supp. 3d 169, 180-81 (D.D.C. 2016) (holding that initial paid suspension of two weeks, periodically extended to total 19 months while an internal investigation was conducted, is not an adverse action because Plaintiff "cannot show 'objectively tangible harm'" resulting from paid leave) (citing inter alia Bland v. Johnson, 66 F. Supp. 3d 69, 73 (D.D.C. 2014), aff'd in part, rev'd in part per curiam, 637 Fed.Appx. 2 (D.C. Cir. 2016) (affirming the district court's dismissal of plaintiff's Title VII claims); Brown v. Georgetown Univ. Hosp. Medstar Health, 828 F. Supp. 2d 1, 9 (D.D.C. 2011); Dickerson v. SecTek, Inc., 238 F. Supp. 2d 66, 79 (D.D.C. 2002))); but see Richardson v. Petasis, 160 F. Supp. 3d 88, 117-18 (D.D.C. 2015) (placement on paid administrative leave constitutes an

adverse employment action where the express terms of employee's leave resulted in termination of employment).

Additionally, the Courts of Appeal in many other Circuits have concluded that placing an employee on paid leave does not constitute an adverse action. See Joseph v. Leavitt, 465 F.3d 87, 90-91 (2d Cir. 2006) (placement on paid administrative leave does not constitute an adverse action in the Second, Fourth, Fifth, Sixth, and Eighth Circuits); accord Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015) (placement on paid leave is not an adverse action).    Furthermore, the Court of Appeals for the Second Circuit has addressed the very issue presented here. Joseph, 465 F.3d at 90-93.

In Joseph, the court held that where an employee is placed on paid administrative leave during the pendency of a criminal investigation and the criminal charges are dismissed, the failure to immediately reinstate the employee does not constitute an adverse action if the employer then pursues its own investigation and conducts it with "reasonable diligence." Joseph, 465 F.3d at 92.    There, an employee was arrested for felony assault and subsequently placed on paid administrative leave by his employer. Id. at 88-89. While the criminal charges were still pending, his employer tried to initiate its own investigation of what transpired, but the employee refused to cooperate on the advice of

14

counsel.   Id. at 89.   Ultimately, the criminal charges were dropped, but rather than reinstate the employee, the employer restarted its investigation and kept the employee on paid administrative leave for an additional five months until the investigation was completed.   Id.

The court held that the failure to immediately reinstate the employee following dismissal of the assault charge, who was being paid, was not an adverse action.   Id. at 91-93.   The court recognized that the agency had an independent interest in investigating the truth of the allegations, even if there was insufficient evidence to prove, beyond a reasonable doubt, that the employee had committed a crime.   Id. at 92.   The court further found that the agency's investigation had been conducted with "reasonable diligence," and therefore, that the period of leave had not been "unreasonably prolonged."   Id.   Thus, the court held that there was no adverse action as the plaintiff could not identify any material harm resulting from the failure to reinstate him.   Id. at 92-93.

The only contrary authority is Richardson.   160 F. Supp. 3d 88.   There, the court held that placement on 39 days of paid administrative leave constituted an adverse employment action because: it was of "unusually long duration"; and the "unusual nature" of the conditions of the employee's leave affected the

15

terms of her employment.   Id. at 118.   Specifically, the court
found that the terms of plaintiff's administrative leave required
her to perform certain tasks to the satisfaction of her supervisor
in order to return to work, but that other terms of her
administrative leave effectively prevented her from completing
these tasks.   Id. at 106, 118.   Unable to comply with these
contradictory mandates, the plaintiff resigned. Id. at 106. Based
on the "unusual nature" of the terms of her leave and what the
court termed a "lengthy suspension", the court held that
plaintiff's administrative leave created "objectively tangible
harm" and was therefore an adverse employment action.   Id. at 118.

    In light of this near-universal consensus, the Court
concludes that placing an employee on paid administrative leave
does not, in and of itself, constitute a materially adverse action
for purposes of a retaliation claim. Admittedly, all of the cases
discussed are Title VII discrimination cases, and thus apply the
"adverse employment action" standard rather than the "materially
adverse action" standard applicable in retaliation cases.   See
Burlington N., 548 U.S. at 67 ("Title VII's substantive provision
and its antiretaliation provision are not coterminous").   But while
the scope of actions covered by Title VII's substantive provision
and its anti-retaliation provisions differ, the magnitude of harm
that plaintiff must suffer does not.   Compare Bridgeforth, 721
F.3d at 663 (retaliation claim requires "objectively tangible

16

harm"), with <u>Forkkio v. Powell</u>, 306 F.3d 1127, 1131 (D.C.Cir. 2002) (discrimination claim requires "objectively tangible harm"); see also <u>Rochon v. Gonzales</u>, 438 F.3d at 1219 ("materiality" of harm alleged is common requirement in retaliation and discrimination claims).  Thus, the holding that a period of paid leave does not, in and of itself, cause objectively tangible harm is equally true in both the retaliation and discrimination contexts.

Accordingly, the Court holds that the decision not to reinstate Plaintiff from paid administrative leave immediately following his acquittal was not a materially adverse action because it did not cause him any objectively tangible harm.  Plaintiff's claim is quite narrow.  He does not challenge the initial decision to place him on administrative leave, instead claiming that he should have been immediately reinstated after being found not guilty on November 20, 2014. And on December 19, 2014, the agency issued the Proposal to Remove Plaintiff, which constitutes a distinct action that independently justified maintaining him on paid administrative leave status. Thus, the essence of Plaintiff's complaint is that his paid administrative leave was prolonged by roughly 29 days.[5]

---

[5] Given the extremely short duration of the challenged action, Plaintiff's reliance on cases involving permanent reassignments or reductions in work level is misplaced.  See Opp'n at p. 3 (citing <u>Czekalski v. Peters</u>, 475 F.3d 360, 364 (D. C. Cir. 2007); <u>Holcomb v. Powell</u>, 433 F.3d 889, 902-03 (D.C. Cir. 2006)).

Because a period of paid administrative leave does not, in and of itself, constitute a materially adverse action, Plaintiff must allege specific, additional facts from which the Court could infer that this short extension of his paid administrative leave caused him objectively tangible harm.  He has failed to do so.

First, it is undisputed that Plaintiff continued to receive full and pay and benefits throughout this time.  See Complaint ¶ 19.  Second, the additional 29 days is not, in itself, so long as to have caused him any objectively tangible harm.  See Castro, 168 F. Supp. 3d at 180-81 (19 months of paid administrative leave is not an adverse action).  Nor is this like Richardson, because Plaintiff has failed to allege that other harms resulted directly from the terms of his administrative leave.  See 160 F. Supp. 3d at 118.

To the extent that Plaintiff argues that the failure to reinstate him is a materially adverse action because it was unreasonable or unjustified, that argument also fails.  While at least one court has suggested that "unreasonably prolong[ing]" a period of paid administrative leave may constitute an adverse action, see Joseph, 465 F.3d at 92, Plaintiff has failed to allege any facts supporting such an inference here.  For example, Plaintiff does not allege that FHFA failed to investigate the charges against him with "reasonable diligence," nor does he allege

18

any facts which would support such an inference.   See Id.   The Government   undoubtedly   had   an   independent   interest   in investigating the charges against him that did not end with his acquittal, Id. at 91-92, and the 29 days which FHFA took following his acquittal to review the evidence presented at trial and determine next steps strike the Court as eminently reasonable. See Ex. B to Mot. to Dismiss [Dkt. No. 7-3 at p.6] (discussing evidence presented at trial).

Nor has Plaintiff identified any statute, regulation, or other employment policy that mandated FHFA reinstate him following his acquittal.   Thus, while Hornsby may have personally expected to return to work immediately following his acquittal, he has failed to allege any facts supporting an inference that FHFA was unjustified when it declined to do so.

Plaintiff has failed to allege any facts that support an inference that the failure to reinstate him following his acquittal caused him objectively tangible harm.   Consequently, it is not a materially adverse action, and he cannot sustain a claim of retaliation on that basis.

### iii. The Proposal to Remove Plaintiff Did Not Cause Him Objectively Tangible Harm

Similarly, the Government argues that the Proposal to Remove is not a materially adverse action because its issuance caused Plaintiff no harm.   Mot. to Dismiss at p. 10-11.   Plaintiff

responds that the Proposal to Remove, when viewed in context of all other events in this case, was sufficiently harmful to dissuade a reasonable worker from engaging in protected activity and is therefore a materially adverse action.  Opp'n at p. 3.

A Proposal to Remove ordinarily does not constitute a materially adverse action.  See Knight v. Mabus, 134 F. Supp. 3d 348, 357 (D.D.C. 2015) (Proposals to Remove do not "amount to adverse employment actions because no 'tangible harm' or 'materially adverse consequence' follow[] directly from them" (quoting Boykin v. England, 02-cv-0950, 2003 WL 21788953, at *5 (D.D.C. 2003))).  A Proposal to Remove is just that, *a proposal*; by its very nature it does not effectuate the removal of an employee.  Id.; see also Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (there is no materially adverse action where a suspension is merely "*proposed*" but not served (emphasis in the original)).

Instead a Proposal to Remove is a procedural device used to provide an employee with notice of the employer's intention to remove her at some later date and give her an opportunity to dissuade the employer from doing so.  See 5 C.F.R. § 752.404(c) (allowing employee to provide formal answer to the charges forming the basis of the proposal).  It is "essentially a precursor" to the final decision to remove the employee.  Boykin, 2003 WL

21788953 at *5.   As such, no objectively tangible harm results
from it, and it ordinarily cannot constitute a materially adverse
action.[6]   Id. at *5; Knight, 134 F. Supp. 3d at 357.   Consequently,
a plaintiff claiming that a Proposal to Remove is a materially
adverse action must allege specific facts supporting an inference
that she suffered objectively tangible harms as a result of its
issuance.

Here, Plaintiff has failed to allege any facts supporting
such an inference.   For example, he has failed to allege that his
pay, benefits, or anything else materially changed as a result of
the issuance of the Proposal to Remove.[7]   Mot. to Dismiss at p.
11.   In the end, what is fatal to Plaintiff's claim is that FHFA
remained free to rescind the Proposal to Remove at any time between
its issuance on December 19, 2014, and his removal on March 19,

---

[6] A Proposal to Remove may be used to show that Plaintiff suffered
a materially adverse action where the Plaintiff claims that she
was constructively discharged.   Burton v. Donovan, 12-cv-1537,
2016 WL 5660285 at *6 (D.D.C. 2016).   However, in doing so, the
Proposal to Remove is merely evidence used to overcome the
presumption that the Plaintiff's resignation or retirement was
voluntary.  Id. (citing Aliotta v. Bair, 614 F.3d 556, 566–67 (D.C.
Cir. 2010)).   Ultimately, it is the termination of plaintiff's
employment, accomplished through an involuntary resignation or
retirement, that constitutes the materially adverse action, not
the Proposal to Remove.  See Aliotta, 614 F.3d at 566 (a plaintiff
can "demonstrate she suffered an adverse employment action by
showing the _resignation or retirement_ was, in fact, not
voluntary.") (emphasis added)).

[7] That Plaintiff was kept on paid administrative leave as a result
of its issuance is insufficient for the reasons discussed above.

2015, meaning that no objectively tangible harm could possibly result because no final decision had been made. See 5 C.F.R. § 752.404 (notice of proposed removal is prerequisite to removing federal employee).

To be sure, Plaintiff's ultimate removal caused him significant harm and flowed directly from the Proposal to Remove. But this fact merely serves to highlight the defect in his current claim: Plaintiff's real complaint is not that FHFA proposed to fire him, but that he was, in fact, fired. Yet, Plaintiff's challenge to his ultimate removal is not before this Court, but instead is currently pending before the MSPB. Complaint ¶ 24. See Knight, 134 F. Supp. 3d at 357 (a Proposal to Remove is "not separately actionable" from the ultimate removal).

As Plaintiff fails to allege any facts supporting the inference that the Proposal to Remove resulted in any objectively tangible harms, it is not a materially adverse action and he cannot sustain a claim of retaliation on that basis. Furthermore, because Plaintiff has failed to allege facts supporting an inference that he was subjected to any materially adverse actions whatsoever, the court is unable to draw the inference that Defendant is liable for retaliation in violation of Title VII and Plaintiff's Complaint

must be dismissed.[8]   See Iqbal, 556 U.S. at 678; Billington, 737 F.3d at 772.

## IV.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is **granted**, and it is hereby

**Ordered,** that Defendant's Motion to Dismiss be granted, and further

**Ordered,** that Plaintiff's Complaint be dismissed in its entirety.


November 4, 2016              Gladys Kessler
                             United States District Judge


---

[8]  Plaintiff argues that the Court should look to the "'constellation of surrounding circumstances, expectations, and relationships'" to determine whether these actions would have dissuaded a reasonable employee from making or supporting a charge of discrimination and therefore are materially adverse actions. Opp'n at p. 3 (quoting Burlington N., 548 U.S. at 69). Because the Court of Appeals has made clear that a materially adverse action is one that causes objectively tangible harm, Bridgeforth, 721 F.3d at 663, the Court refuses to engage in the open-ended analysis suggested by Plaintiff.